Affirmed and Memorandum Opinion filed April 24, 2003















Affirmed and
Memorandum Opinion filed April 24, 2003.

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-02-00434-CR

____________

 

MARION GLENN, Appellant

 

V.

 

THE STATE OF TEXAS, Appellee

 

____________________________________________

 

On Appeal from
the 248th District Court

Harris County, Texas

Trial Court
Cause No. 883,044

 

____________________________________________

 

M E M O R A
N D U M   O P I N I O N

            A jury found appellant, Marion
Glenn, a police officer employed with North Forest Independent School
 District, guilty of misdemeanor theft by a
public servant.  In two issues, appellant
contends that (1) the trial court lacked jurisdiction because the indictment
was fatally defective; and (2) his employers acknowledged and consented to the
practice that resulted in his conviction. 
We affirm.








Facts

            Appellant was employed approximately
eighteen years as an officer for the North Forest I.S.D. Police
Department.  He worked the second shift,
which ran from 4:00 p.m. until midnight. 
During part of his scheduled shift, appellant was also working a second
job at Ben Taub Hospital.  North Forest had a
policy of not allowing officers to work extra jobs outside the school
district.  When Fred Coutee,
a captain in the North Forest I.S.D. Police Department, was informed that
appellant and another officer were working second jobs, he reviewed their
hospital time sheets.  The investigation
was focused on the period from January through May 2001.  Without considering the travel time between North
Forest and Ben Taub Hospital (at least a twenty
minute drive), appellant worked eleven hours at Ben Taub
that overlapped with his North Forest hours. 
According to calculations by North Forest personnel,
appellant was paid $168.63 for hours he had not actually worked.  If compensatory time is requested, the
officer completes a pink time slip, and he is credited an hour and a half for
every extra hour worked.  There was no
evidence that appellant requested compensatory time or overtime pay.  Appellant did not complete pink time slips
for the days he worked at both places. 

            At trial, appellant presented
evidence that officers at North Forest routinely
“swapped time,” meaning an officer would work part of another officer’s
shift.  Instead of seeking overtime pay
for these extra hours, the officer would leave early on a different day.  Appellant claimed that he used such an
arrangement to work his second job at Ben Taub.  Accordingly, appellant contends the time he
spent at Ben Taub was merely undeclared compensatory
time in lieu of overtime pay. 

the Indictment

            In his first issue, appellant
contends the indictment was fatally defective because the State omitted an
element of theft, namely, “without the effective consent of the owner.”  Thus, he contends the trial court lacked
jurisdiction.  If an indictment is
fatally defective, then the trial court does not have jurisdiction to hear the
case and any judgment rendered by the court would be void.  Studer v. State, 799 S.W.2d 263, 267 (Tex. Crim. App. 1990).

            “A person commits [theft] if he
unlawfully appropriates property with intent to deprive the owner of
property.”  Tex. Pen. Code Ann. § 31.03(a) (Vernon 2003).  The statute defines several ways in which an
appropriation is unlawful, including “without the owner’s effective
consent.”  Id. § 31.03(b).  However, “[t]o
plead theft . . . the State has only to allege that the accused appropriated
property unlawfully with intent to deprive the owner of it.”  Chavez v. State, 843
S.W.2d 586, 588 (Tex. Crim. App. 1992).  The methods of unlawful appropriation listed
in section 31.03(b) are merely evidentiary matters, not elements of the
offense.  Ex parte Porter,
827 S.W.2d 324, 327 (Tex. Crim. App. 1992).  Thus, “[f]ailure to
allege that the property was appropriated without the owner’s effective consent
does not render the indictment fundamentally defective.”  Ex Parte Luna, 784 S.W.2d 369, 371 (Tex. Crim. App. 1990).

            Additionally, even if “without the
owner’s effective consent” was an element, its omission would not render the
indictment fatally defective because “failure to allege an element of an
offense in the charging instrument” is a defect of substance.  Studer, 799 S.W.2d at 268.  A defect of substance requires an objection
to preserve error on appeal:

If the defendant does not
object to a defect, error, or irregularity of form or substance in an indictment or information before the date on which
the trial on the merits commences, he waives and forfeits the right to object
to the defect, error, or irregularity and he may not raise the objection on
appeal or in any other post-conviction proceeding.

Tex. Code Crim. Pro. Ann. art. 1.14(b)(Vernon Supp. 2003)(emphasis added).  Because appellant failed to object, he is
precluded from raising the issue for the first time on appeal.  Accordingly, we overrule issue one.

Factual Sufficiency

            In his second issue, appellant
contends that his superiors at North Forest were aware
of his second job and consented to the practice of swapping time.  Based solely on what appellant emphasized in
his brief, we construe this argument as a challenge to factual sufficiency of
the evidence.  

            In reviewing factual sufficiency, we
view all the evidence in a neutral light and set aside the verdict only if
“proof of guilt is so obviously weak as to undermine confidence in the jury’s
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.”  Johnson v. State, 23
S.W.3d 1, 11 (Tex. Crim. App. 2000).  We review the fact finder’s weighing of the
evidence and are authorized to disagree with the fact finder’s determination.  Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim. App. 1996). 
The jury, as trier of fact, is entitled to
resolve any conflicts in the evidence, to evaluate the credibility of the
witnesses, and to determine the weight to be given any particular evidence.  Wesbrook v. State, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).  With these restrictions in mind, we review
the evidence presented by both parties at trial.

            Captain Coutee
testified that although formally disallowed by North Forest, officers
commonly worked second jobs.  He further
testified that North Forest sent
several memoranda reminding officers not to accept extra jobs.  Instead, the officers could earn overtime pay
by working extra hours during district athletic events and school dances. 

            Chief Hubert Kerr testified that if
a North Forest officer works more than forty
hours a week, the time should be reflected on sign-in sheets.  Captain Coutee
tabulates the hours worked through the sign-in sheets, which each officer
completes on a daily basis.  Requests to
redeem compensatory time must be approved and noted on the sign-in sheets.  Regardless, North Forest’s policy
is that its police officers may not work extra jobs outside the school
district.  Chief Kerr acknowledged that
this policy had been disregarded, but this practice was without his
permission.  Specifically, neither he nor
the superintendent of schools gave appellant permission to work an extra job
outside the school district.  Finally, he
testified that appellant did not use compensatory time to work at Ben Taub.  

            Officer James Alexander testified on
appellant’s behalf and corroborated appellant’s “swapping time”
contention.  Officer Alexander stated
that he worked the third shift at North Forest, from midnight until eight in the morning.  He was a basketball referee on Tuesday
evenings, and he would often begin his shift early because he stayed at school
after the game ended.  He testified that
he would relieve appellant, but not sign-in until his shift officially
began.  With one exception, appellant’s
Ben Taub work records verify the assertion that all
overlapping time between the two jobs occurred on Tuesdays.  Officer Alexander also explained that there
were occasions when appellant worked late until his arrival, but they did not
record it on the sign-in sheets.  He
further testified that it was a common practice for officers to sign-in for an
entire shift, even if they left early.

            Appellant testified that he and
Officer Alexander had the duty, on different shifts, to monitor a fire hazard
machine.  He stated that Officer
Alexander arrived early often and it made little sense for them to
simultaneously watch the machine.  Thus,
Officer Alexander relieved him of duty. 
He did the same for Officer Alexander “numerous times.”  He claimed that he never marked his sign-in
sheets to reflect actual time because officers were not formally permitted to
charge overtime.  Consequently, “swapping
time” was common between officers on all shifts.  He testified that he would not leave his
shift at North Forest until
Officer Alexander arrived.  He also
admitted that he signed-in for an entire shift, but claimed this was a common
practice in the department regardless of actual hours worked.  He testified that on many days, he worked an
hour to an hour-and-a-half extra, but did not request overtime pay.  Appellant contends North Forest did not
lose any money related to his swapping time with Officer Alexander.  

            Appellant admitted that he was aware
of North Forest’s policy
disallowing officers to have second jobs outside the school district.  However, he testified that Captain Coutee was aware of his Ben Taub
job.  He stated that Captain Coutee saw him and another officer with their Ben Taub identification cards before the investigation was
initiated.  Appellant further admitted
that he knew he was required to complete a pink time slip to obtain
compensatory time, whether earned or redeemed. 

            Because we recognize that the jury
is the sole judge of the weight and credibility of the testimony, we should not
substitute our judgment for that of the jury. 
See Santellan
v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997).  In
a factual sufficiency analysis, we defer to the jury’s findings.  Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.1997).  Under this standard, a decision is not
manifestly unjust merely because the jury resolved conflicting evidence in the
State’s favor.  Id. at 410.  

            It is evident from the verdict that
the jury did not believe appellant’s explanations.  Specifically, the jury may not have believed
appellant actually worked the requisite hours at North Forest through an
arrangement with Officer Alexander.  The
jury could have believed Chief Kerr’s testimony that appellant did not use
compensatory time because he never completed the necessary paper work.  If appellant claimed compensatory time, he
would have received time-and-a-half for every extra hour worked.  This would have given appellant much more time
than an “even trade” with Officer Alexander. 

            Because the credibility of proffered
testimony is within the jury’s province, 
Fuentes v. State, 991 S.W.2d
267, 271 (Tex. Crim. App.1999), and because the jury
apparently disbelieved appellant’s explanations, see Sharp v. State, 707 S.W.2d 611, 614 (Tex. Crim.
App. 1986) (jury may choose to disbelieve any portion of witnesses’ testimony),
but believed his superiors, we defer to its finding.  “Unless the available record clearly reveals
a different result is appropriate, an appellate court must defer to the jury’s
determination concerning what weight to give contradictory testimonial evidence
because resolution often turns on an evaluation of credibility and demeanor.” 
Johnson, 23 S.W.3d at 8.  The evidence was sufficient for the jury to
conclude that appellant did not have consent from his superiors to work an
extra job while signed-in at North Forest.  Accordingly, we hold there was factually
sufficient evidence to find appellant guilty of theft by public servant.  Appellant’s second point of error is
overruled.  

            Having overruled appellant’s points
of error, we affirm the judgment of the trial court.  

 

                                                                        /s/        Charles W. Seymore

                                                                                    Justice

 

Judgment
rendered and Memorandum Opinion filed April 24, 2003.

Panel
consists of Justices Anderson, Seymore, and Guzman.

Do Not Publish — Tex. R. App. P. 47.2(b).