

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-09-00053-CR
_____

JIMMY MICHAEL DEVANCE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 115th Judicial District Court
Upshur County, Texas
Trial Court No. 14,895

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In early 2008, after picking out a particular new automobile from Mike Craig Ford Mercury (the "dealership") in Gilmer, Texas, Jimmy Michael DeVance told dealership salesman Troy Whitworth that he intended to pay for the car with cash "coming in from a previous job" and told the dealership's finance and insurance manager, Gary Goodson, that he would pay cash for the car in full within the week. DeVance and his girlfriend, Brandy Johnson,[1] executed a Motor Vehicle Buyer's Order, dated March 17, 2008, in which the dealership retained a security interest until full payment. At the same time, an Application for Texas Certificate of Title was completed for the purpose of retitling the vehicle in DeVance's and Johnson's names. After that paperwork was completed, DeVance and Johnson were allowed to take the vehicle into their possession.

The problem was, DeVance never paid for the vehicle. At the heart of this case is the fact question of whether he ever intended to.

Finding that DeVance never intended to pay for the vehicle, an Upshur County jury found DeVance guilty of theft by deception of property valued at $20,000.00 or more, but less than $100,000.00.[2] After pleading true to the State's enhancement paragraph, DeVance was sentenced to fifteen years' imprisonment in the Institutional Division of the Texas Department of Criminal Justice. On appeal, DeVance argues that the evidence is legally and factually insufficient to support

---

[1]Because DeVance did not have a valid driver's license, Johnson came with him to sign the paperwork and pick up the car.

[2]The full market value of the car was $24,429.50.

2

his conviction (because there was no evidence of deception by DeVance and insufficient evidence to demonstrate Goodson had a greater right of possession to the car), that there was error in the jury charge (because the definition of deception "contained in the [j]ury charge is at fatal variance with the" evidence), and that his trial counsel was ineffective.[3]

We affirm the trial court's judgment because we hold that (1) legally and factually sufficient evidence support DeVance's conviction, (2) the jury charge was not erroneous as claimed, and (3) no ineffective assistance of counsel has been shown.

*(1)     Legally and Factually Sufficient Evidence Support DeVance's Conviction*

Goodson gave DeVance "permission to take the car off the lot with a verbal agreement that he was going to bring the money in." Goodson explained that the dealership was a small town dealership that had in the past allowed people to drive cars off the lot without paying. He testified, "I would not have allowed that car to go off the Lot if I had any reason to believe that he wasn't going to pay as he said he was," or if he believed DeVance had to obtain third-party financing. On March 21, Goodson spoke with DeVance and agreed to extend the payment date to March 24.

No payment for the car was made. Whitworth and Goodson tried to contact DeVance by telephone and by visiting DeVance's home address. Another dealership employee, Loy DeMoss,

---

[3]"Criminal defendants may bring challenges to legal and factual sufficiency of the evidence on appeal without raising the issue at trial." *Patterson v. State*, 204 S.W.3d 852, 857 (Tex. App.—Corpus Christi 2006, pet. ref'd) (citing *Moff v. State*, 131 S.W.3d 485, 488–89 (Tex. Crim. App. 2004)). Also, claims of ineffective assistance of counsel are not required to be brought before the trial court. *Robinson v. State*, 16 S.W.3d 808, 809 (Tex. Crim. App. 2000).

tried to contact DeVance about fifty times. He once spoke with DeVance, who claimed the car was paid for. Johnson testified DeVance drove the car a "multitude" of times and parked it between a tree and a home to prevent it from being towed.

The dealership notified the police of the situation. Officer Rozanne Warren spoke with DeVance, who said he "didn't have to return the vehicle because there was an error on the contract, it didn't specifically say what his monthly payments were supposed to be and that he had spoken with an attorney who advised him he didn't have to pay for it." After prodding, Warren was able to obtain the address where the vehicle was located. It was ultimately found in Wichita Falls, Texas.

Legal and factual sufficiency questions involve separate analyses. The requirement of legal sufficiency serves as a tool to determine whether submission of an issue to the jury is required. *Clewis v. State*, 922 S.W.2d 126, 132–33 (Tex. Crim. App. 1996). In other words, if the evidence in this case was insufficient to raise an issue of DeVance's guilt, it should not have been submitted for the jury's decision. *Id.* When conducting this analysis, we review all of the evidence in the light most favorable to the verdict and determine whether any rational jury could find the essential elements of theft by deception beyond a reasonable doubt. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *Lacour v. State*, 8 S.W.3d 670, 671 (Tex. Crim. App. 2000) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Clewis*, 922 S.W.2d at 132–33; *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

Once we determine that the evidence raised issues for the jury's resolution, we will not sit as the thirteenth juror re-evaluating the weight and credibility of the evidence. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007); *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999). Instead, we give full play to the jury's responsibility to weigh the evidence, resolve conflicts in the testimony, and draw reasonable inferences from basic facts. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); *Clewis*, 922 S.W.2d at 133; *Bottenfield v. State*, 77 S.W.3d 349, 354 (Tex. App.—Fort Worth 2002, pet. ref'd) (citing *Jackson*, 443 U.S. at 319).

Unlike a legal-sufficiency review, a factual-sufficiency review requires us to examine the evidence in a neutral light and to determine whether the proof of guilt is obviously weak as to undermine confidence in the verdict, or, if taken alone, is greatly outweighed by contrary proof so as to be clearly wrong and unjust. *Zuliani v. State*, 97 S.W.3d 589, 595 (Tex. Crim. App. 2003); *Johnson*, 23 S.W.3d at 11; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997); *Harris v. State*, 133 S.W.3d 760, 764 (Tex. App.—Texarkana 2004, pet. ref'd). A clearly wrong and unjust verdict is manifestly unjust, shocks the conscience, or clearly demonstrates bias. *Santellan v. State*, 939 S.W.2d 155, 165 (Tex. Crim. App. 1997).

We are not free to reweigh the evidence and set aside the jury verdict merely because we feel a different result is more reasonable. *Clewis*, 922 S.W.2d at 135. Instead, we will ensure only that the jury reached a rational decision, and will find the evidence factually insufficient only when necessary to prevent manifest injustice. *Johnson*, 23 S.W.3d at 8–9, 12; *Clewis*, 922 S.W.2d at 133,

5

135; *Cuong Quoc Ly v. State*, 273 S.W.3d 778, 783 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd) (citing *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993)).

Our analysis of legal and factual sufficiency of the evidence is measured "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997); *see also Grotti v. State*, 273 S.W.3d 273, 280 (Tex. Crim. App. 2008). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. It is used to evaluate both legal and factual sufficiency. *Grotti*, 273 S.W.3d at 280–81.

DeVance committed theft "if he unlawfully appropriate[d] property with intent to deprive the owner of property" valued at "$20,000 or more but less than $100,000."[4] TEX. PENAL CODE ANN. § 31.03(a), (e)(5) (Vernon Supp. 2009). Appropriation of property is unlawful if it "is without the owner's effective consent." TEX. PENAL CODE ANN. § 31.03(b)(1) (Vernon Supp. 2009). Here, Goodson gave DeVance permission to take the car off the lot. However, "[c]onsent is not effective . . . if induced by deception or coercion." TEX. PENAL CODE ANN. § 31.01(3)(A) (Vernon Supp. 2009). The Penal Code contains several definitions of the term "deception," including "creating or

---

[4]The value of the property is an element of the offense. *Winkley v. State*, 123 S.W.3d 707, 713 (Tex. App.—Austin 2003, no pet.) (citing *Simmons v. State*, 109 S.W.3d 469, 472 (Tex. Crim. App. 2003)). Evidence supporting this element is not challenged.

6

confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true." TEX. PENAL CODE ANN. § 31.01(1)(A) (Vernon Supp. 2009). With the elements of the hypothetically correct jury charge in mind, we turn to the issue of sufficiency of the evidence in two areas of claimed insufficiency.

> *(a)    The Evidence Was Sufficient to Demonstrate DeVance Did Not Have a Greater Right of Possession of the Vehicle*

DeVance argues the State failed to prove Goodson was an owner that had a greater right of possession to the vehicle. He bases this argument on the principle that Goodson was an employee of the actual owner, the dealership.[5]

An owner, as defined in the Texas Penal Code, is a person who "has title to the property, possession of the property, whether lawful or not, or *a greater right to possession of the property than the actor*." TEX. PENAL CODE ANN. § 1.07(a)(35)(A) (Vernon Supp. 2009) (emphasis added).[6] To fulfill the rules of pleading, the name of the owner "must be alleged in the charging instrument." *Freeman v. State*, 707 S.W.2d 597, 602–03 (Tex. Crim. App. 1986); *see* TEX. CODE CRIM. PROC. ANN. art 21.08 (Vernon 2009). Ownership may be alleged through the actual owner or a special owner. TEX. CODE CRIM. PROC. ANN. art 21.08; *Inman v. State*, 650 S.W.2d 417, 419 (Tex. Crim.

---

[5]DeVance also incorrectly states in the brief that "[t]here is no evidence that this witness let DeVance take the car . . . ."

[6]The owner's name is not a substantive element of the theft statute. *Ex parte Luna*, 784 S.W.2d 369, 371 (Tex. Crim. App. 1990); *see also Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002).

7

App. 1983) (nature of security guard's employment was sufficient to qualify him as special owner of automobile of unnamed customer). A special owner is an individual in custody or control of property belonging to another person. *Harrell v. State*, 852 S.W.2d 521, 523 (Tex. Crim. App. 1993). When a corporation is the owner of property subject to theft, it is the preferable practice to allege special ownership in a natural person acting for the entity. *Id.*; *State v. Bartee*, 894 S.W.2d 34, 44 (Tex. App.—San Antonio 1994, no pet.) (citing *Sowders v. State*, 693 S.W.2d 448, 451 (Tex. Crim. App. 1985)). The State has the "burden of proving beyond a reasonable doubt the ownership allegation." *Freeman*, 707 S.W.2d at 603.

Consistent with common practice, the State alleged in the indictment that Goodson was the owner. He was the finance and insurance manager for the dealership. He prepared the sales documents on behalf of the dealership, dealt with financing, and collected money for the dealership. Goodson had the authority to give permission for the car to be taken off the lot. Goodson testified he had a greater right of possession to the car. On the other hand, the jury heard evidence that, though DeVance was in possession of the car, he had not paid any money for it, and the dealership retained a security interest in the car until it was paid in full. This evidence was legally sufficient for a rational jury to find beyond a reasonable doubt that Goodson was the owner of the car, with greater right of possession than DeVance. Moreover, even after examining the evidence in a neutral light, we cannot say this finding was obviously weak or greatly outweighed by contrary proof so as to be clearly wrong and unjust.

8

*(b)      The Evidence Was Sufficient to Demonstrate DeVance Had the Requisite Mens Rea*

Next, DeVance complains the evidence was insufficient to establish intent to deceive.  A claim of theft, where a contract is involved, requires proof of more than intent to deprive the owner of property and subsequent appropriation of the property.  *Jacobs v. State*, 230 S.W.3d 225, 229 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Baker v. State*, 986 S.W.2d 271, 274 (Tex. App.—Texarkana 1998, pet. ref'd).  It "requires proof of the false pretext or fraud in order to become a viable criminal prosecution."  *Baker*, 986 S.W.2d at 274.  The State must show a rational jury could have found that DeVance had no intention of fulfilling his obligation under the agreement and that his promise to pay for the car was "merely a ruse to accomplish theft by deception."  *Jacobs*, 230 S.W.3d at 230 (citing *King v. State*, 17 S.W.3d 7, 15 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)).  Criminal intent can be inferred from DeVance's conduct and the surrounding circumstances.  *Baker*, 986 S.W.2d at 274.  Since intent to deceive is seldom susceptible to direct proof, it ordinarily must be proven by circumstantial evidence.  Thus, criminal intent may be inferred from the defendant's conduct and surrounding circumstances.  *Baker*, 986 S.W.2d at 274; *Plante v. State*, 692 S.W.2d 487, 490 (Tex. Crim. App. 1985) (allowing introduction of extraneous events to establish intent to deceive).

The jury heard that DeVance promised to completely pay for the car in cash, within a week of taking the car off the dealership's lot.  DeVance's girlfriend testified that DeVance parked the car in a manner such as would prevent a tow truck from accessing it, allowing for a clear inference that

9

DeVance knew he would not have the cash for payment. DeMoss testified that DeVance lied by telling him the car was paid for, then hung up the telephone when DeMoss told him that no money had been received. Despite over seventy calls, DeVance failed to show up at the dealership to rectify the situation. Contrary to statements that the car was paid for, he told Officer Warren that his attorney told him not to pay for the car because there was an error in the contract. Also, the car was found outside the Gilmer city limits where it would be difficult to locate. We conclude this evidence was legally and factually sufficient for a rational jury to find that DeVance created the false impression that he would pay when he had no such intention, that this promise was merely a ruse to get the car off the lot, and that it likely affected Goodson's decision to let DeVance take the car off the lot.

*(2)     The Jury Charge Was Not Erroneous as Claimed*

Next, DeVance claims that there was error in the charge because the wrong definition of deception was used. We employ a two-step process when reviewing alleged jury charge error. *Abdnor v. State*, 871 S.W.2d 726, 731–32 (Tex. Crim. App. 1994); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (op. on reh'g). First, we look at the jury charge to determine if, in fact, the trial court erred. *Abdnor*, 871 S.W.2d at 731–32. If error is found, we then determine if the harm is sufficient to warrant reversal. *Id.* Under *Almanza*, the standard of review turns on whether there was a proper objection to the charge at trial. *Id.*; *see Mann v. State*, 964 S.W.2d 639, 641 (Tex. Crim. App. 1998). When a proper objection is made, error in the jury charge requires reversal if the

10

error was harmful or was "calculated to injure the rights of defendant." *Almanza*, 686 S.W.2d at 171. If there is no proper objection at trial, reversal is required only if the harm is so egregious that the trial was not fair and impartial. *Id.* at 174; *Rudd v. State*, 921 S.W.2d 370, 373 (Tex. App.—Texarkana 1996, pet. ref'd).

Here, our inquiry ends at the first step. There are several definitions of deception in the Penal Code. *See* TEX. PENAL CODE ANN. § 31.01(1) (Vernon Supp. 2009). The indictment generally alleged theft by deception, without specifying which of the five definitions would be used.[7] The deception definition used in the jury charge came straight from the Texas Penal Code.[8] TEX. PENAL CODE ANN. § 31.01(1)(A). Thus, there was no error in the charge. Also, as described above, there was no material variance between the evidence at trial and the definition used in the charge, since the evidence was sufficient for a rational jury to find DeVance knowingly created, by words or conduct, a false impression of fact that likely affected Goodson's decision to let DeVance take possession of the vehicle.

*(3)     No Ineffective Assistance of Counsel Has Been Shown*

Without any application to the standards for reviewing ineffective assistance claims, DeVance argues counsel was ineffective because:

---

[7]We find in the record before us no objection to, or motion to quash, the indictment, or any other effort to require the State to elect which of the five statutory definitions of deception it would use.

[8]There was no objection to the jury charge as used.

11

1.   He didn't offer evidence of where the Defendant resided locally in Gladewater, Texas during the time period that the Mike Craig personnel and law enforcement were looking for the car. This location was the defendant's mother's address.

2.   He failed to argue why the State and Mike Craig Ford waited from March 17 or March 19, 2008 to April 8, 2008, to file charges.

3.   He didn't or wasn't able to argue lack of intent, because he was in the immediate area until March 29, 2009 when he went out of town for work.

4.   He didn't argue to the jury that DeVance told where the vehicle was located.

5.   Saw said attorney only twice before trial.

6.   The Defendant says he never gave consent for the jury to determine punishment.

7.   The trial attorney never objected to the jury charge, and he

8.   Failed to point out several differences in the police report (offense report) and the testimony.

He also claims counsel should have objected to the jury charge definition of deception.

"Rarely will a reviewing court be afforded, on a direct appeal, the opportunity to make a determination regarding ineffective assistance of counsel" because any allegation of ineffectiveness must be firmly founded in the record. *Wallace v. State*, 75 S.W.3d 576, 589 (Tex. App.—Texarkana 2002), *aff'd*, 106 S.W.3d 103 (Tex. Crim. App. 2003); *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). DeVance bears the burden of showing by a preponderance of the evidence in the record before us that his

counsel was ineffective. *Goodspeed*, 187 S.W.3d at 392; *Thompson*, 9 S.W.3d at 813; *Cannon v. State*, 668 S.W.2d 401, 403 (Tex. Crim. App. 1984).

We apply the two-pronged *Strickland* test handed down by the United States Supreme Court to determine whether DeVance received ineffective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668 (1984). Failure to satisfy either prong of the *Strickland* test is fatal. *Ex parte Martinez*, 195 S.W.3d 713, 730 (Tex. Crim. App. 2006). Thus, we need not examine both *Strickland* prongs if one cannot be met. *Strickland*, 466 U.S. at 697. DeVance must show counsel's performance fell below an objective standard of reasonableness when considering prevailing professional norms. *Strickland*, 466 U.S. at 687–88. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance and that the challenged action could be considered sound trial strategy. *Strickland*, 466 U.S. at 689; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004); *Tong v. State*, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000). Therefore, we will not second-guess through hindsight the strategy of DeVance's counsel at trial. *Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979); *Hall v. State*, 161 S.W.3d 142, 152 (Tex. App.—Texarkana 2005, pet. ref'd). Where the record is silent as to why counsel failed to make an objection or take certain actions, we will assume it was due to any strategic motivation that can be imagined. *Mata v. State*, 226 S.W.3d 425, 431 (Tex. Crim. App. 2007); *Garcia v. State*, 57 S.W.3d 436, 441 (Tex. Crim. App. 2001); *Fox v. State*, 175 S.W.3d 475, 485–86 (Tex. App.—Texarkana 2005, pet. ref'd).

Next, it is not enough for DeVance to show that the errors had some conceivable effect on

the outcome of the proceeding. *Strickland*, 466 U.S. at 693. To meet the second prong of the *Strickland* test, he must show that the deficient performance damaged his defense such that there is a reasonable probability that the result of the trial would have been different. *Id.*; *Tong*, 25 S.W.3d at 712. A reasonable probability is one "sufficient to undermine confidence in the outcome." *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

After reviewing the record, we determine that DeVance's laundry list of complaints against counsel is unsupported by the record.[9] Because there is no record of counsel's motivations with regard to any of DeVance's complaints, "the presumption that counsel's actions might be considered sound trial strategy has not been overcome; thus, we cannot conclude trial counsel was deficient." *Jones v. State*, 229 S.W.3d 489, 494 (Tex. App.—Texarkana 2007, no pet.). Further, because we determined there was no error in the jury charge which arose from the definition of deception used, counsel was not required to object.

---

[9]Indeed, DeVance's appellate brief states, "Most of the Appellant's claims are either not supported by the record or are implied, partially supported by the record or absent from the record by which Appellant contends or presumes that same must therefore be true." The brief clarifies that with the exception of the jury charge issue, "the remainder of the objections deal more with trial tactics."

We affirm the trial court's judgment.


Josh R. Morriss, III
Chief Justice

Date Submitted:     September 16, 2009
Date Decided:       October 27, 2009

Do Not Publish